UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY STEWART,

        Plaintiff,

    v.

                                        Case No. 11-12218
                                        Honorable Julian Abele Cook, Jr.

DOROTHY STEPHENSON and VISTEON
TRANSITION PROGRAM,

        Defendants.

## ORDER

In this case, the Plaintiff, Bradley Stewart, has challenged the decision by the Defendants, Visteon Transition Program ("the Plan") and Dorothy Stephenson, the Plan administrator, to deny benefits to him under an employee severance plan.

Currently before the Court are the parties' motions for summary judgment under Fed. R. Civ. P. 56. For the reasons that follow, the Defendants' motion for summary judgment is granted, and the Plaintiff's motion for summary judgment is denied.

I.

Stewart is a former maintenance supervisor at an automotive plant in Milan, Michigan that is operated by Automotive Component Holding, LLC. ("Automotive Component"). During the period that is applicable to this controversy, he was a full-time salaried employee of Visteon Corporation ("Visteon") with over 30 years of service that had been leased to Automotive Component. The challenged Plan is a self-administered employee benefit program that was maintained under the authority of the Employee Retirement Income Security Act of

1974 ("ERISA").   It was created on August 21, 2009 in order to provide severance benefits to full-time salaried employees whose employment had been involuntarily terminated under certain conditions. Stephenson, as the Visteon Vice President of Human Resources, served as the Plan administrator. However, in this case, pursuant to the provisions of the Plan, Stephenson delegated the authority to decide Stewart's claim to Barbara Quilty, the Visteon Director of Compensation and Benefits.[1]

During the summer of 2009, Stewart decided to retire for medical reasons. In June 2009, Stewart discussed this retirement with his manager, Brian Hall, from whom he requested a severance package known to the employees at the time as "3P." According to Stewart, Hall advised him to take additional time to consider his request, opining that once he requested the package he could not return to work. However, Stewart asserts that, after waiting for two more days to evaluate Hall's recommendation, he reaffirmed his desire to retire with the benefits of the "3P" plan. As such, it was agreed between these two men that Stewart would retire on August 1, 2009. Although Hall does not have any recollection of any discussion with Stewart regarding the 3P plan, he does remember speaking with him about the possibility of retirement due to medical concerns.

On July 29, 2009, Stewart met with Hall and Donald Vincent, the human resources manager at the Milan plant, to discuss the details of his retirement plans. The parties agree that Stewart reaffirmed his desire to retire for medical reasons. However, Vincent maintains that Stewart was informed during this meeting that he did not qualify for the "3P" severance plan

---

[1]For the purposes of this motion, and continuing the convention followed by both parties, the Court will refer to Quilty, Stephenson's designee, as "the Administrator."

2

because it was reserved only for those employees whose departure from the company was involuntary. Vincent insists that he encouraged Stewart to postpone his August 1st retirement date in order to determine how to best proceed with his medical issues, in light of the fact that he was not eligible to receive the "3P" benefits. On the other hand, Stewart asserts that he was asked to postpone his retirement date in order to provide Visteon with more time to process his "3P" severance package. It is his recollection that he was told the entire process would be finished in approximately two weeks. Nevertheless, the parties agree that Stewart proceeded to cancel his retirement date of August 1, 2009 in order to stay on the company payroll as an active employee. It is also undisputed that - despite remaining on the payroll through the end of September, Stewart did not return to work after July 31, 2009.

In August 2009, the "3P" Plan was superseded by the creation of the Plan. In early September 2009, Stewart called the company that handles retirement packages for Visteon and asked to receive an application packet for a retirement date of October 1, 2009. He was told that this request was submitted too late to receive his retirement benefits on October 1st because the processing period for a retirement package requires thirty days after a request for retirement is made. On the basis of that calculation, the next available date on which Stewart would be eligible to receive retirement benefits would be November 1, 2009. According to the Defendants, Stewart was informed that this would result in a one-month lag between the date of his final paycheck and the date upon which he would begin to receive his retirement benefits. Notwithstanding, his request to retire on October 1st was accepted. Stewart, on the other hand, submits that, after learning of this time lag, he (1) withdrew his request for an October 1st retirement date, and (2 ) sought to obtain a new retirement date of November 1st. He believed that this action would allow

3

him to (1) remain on the payroll, and (2) continue receiving paychecks until his retirement benefits began on November 1st.

On September 21, 2009, Stewart, through his counsel, sought to obtain additional information from Visteon regarding his severance package. However, Visteon did not respond. Stewart was removed from the Company's payroll on September 30, 2009. Moreover, he did not receive any compensation for the month of October. On October 29, 2009, Stewart, through his counsel, sent another letter to Visteon, in which he requested an update on the status of his severance benefits. Once again, he did not receive any response. Stewart's retirement benefits began on November 1, 2009.

On December 10, 2009, Stewart received a letter from the Administrator who formally denied his request for severance benefits under the Plan. She based her denial on Stewart's ineligibility to receive benefits under the Plan because he voluntarily retired on October 1, 2009. Stewart's appeal of this decision was denied by the Administrator on June 8, 2010. This lawsuit followed.

## II.

This civil action was initiated on the basis of § 501(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (authorizing civil action by participant or beneficiary of ERISA-governed plan to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

Discretionary authority of this sort is to be evaluated under an arbitrary and capricious standard of review. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006). "The arbitrary and capricious standard 'is the least demanding form of judicial review of administrative action. . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Hunter v. Life Ins. Co. of N. Am.*, 437 F. App'x 372, 376 (6th Cir. 2011) (unpublished) (quoting *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)). Indeed, the Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005).

In this case, the Plan states that "[t]he Plan Administrator shall have the final and exclusive discretion to determine whether an Employee's termination of employment is involuntary." Def. Mot. Summ. J., Ex. A, at 5.[2] Given this unambiguous grant of discretion, the Court will review the Administrator's decision under an arbitrary and capricious standard. *See Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). A review by this Court is limited to the administrative record that was

_____

[2]The administrative record was attached to the Defendants' Motion for Summary Judgment as Exhibits A and B. *See* Quilty Aff., Def. Mot. Ex. 1 ¶4. Exhibit A consists of a copy of the Visteon Transition Program, dated Aug. 21, 2009. Exhibit B includes the remainder of the administrative record.

available to the Administrator when she conducted her review. *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011).

Stewart contends that the decision regarding his eligibility for benefits should be reviewed by this Court under a de novo standard because it was actually determined by the human resources manager, Donald Vincent, who is not authorized by the Plan to play any role in determining eligibility. *See Shelby County Health Care Corp. v. Majestic Star Casino, LLC Group Health Benefit Plan*, 581 F.3d 355, 365 (6th Cir. 2009) ("[W]hen the benefits decision is made by a body other than the one authorized by the procedures set forth in a benefits plan, federal courts review the benefits decision *de novo*." (internal quotation marks omitted)).

According to Stewart, the following statements made by Vincent during his deposition support this position:

> Q.    Did you ever go to the company when employees expressed desire to retire to see if they're eligible for the Visteon Training Program?
> A.    Go to the company? I was the HR manager so I was the highest level there, so I wouldn't go to the company.
> Q.    Who would make the decision if someone's eligible for the Visteon Training Program?
> A.    Oh, I'm the HR manager so the eligibility requirements would go through me.

Vincent Dep. 19:8-16. Stewart maintains that the reference to "the eligibility requirements would go through me" is an indication that Vincent had made a determination that he (Stewart) was ineligible for benefits under the Plan. The Court disagrees. These statements were made in the context of a hypothetical situation whereby an employee has expressed a desire to voluntarily retire while also receiving severance benefits under the Plan. Vincent explained that, in general, such an employee could not simply request severance benefits because the Plan "is not a

6

self-nominating process." Instead, a person's eligibility for the Plan depended on "the decision of the [C]ompany" to determine if the employee's position was being eliminated. Thus, Vincent's testimony affirmed that the Plan - by its own terms - is only available to those employees whose positions were eliminated. He would meet with those employees only after they were terminated in order to help them navigate the employment termination process. Contrary to Stewart's argument, Vincent did not state that he ever handled an individual employee's claim for benefits. In fact, Barbara Quilty, Visteon's Director of Compensation and Benefits during the relevant time period, submitted a sworn affidavit which indicated that she had handled Stewart's claim. Accordingly, Stewart's request for de novo review must be denied.

The Court will now apply the arbitrary and capricious standard of review and, in so doing, it will limit its review to the administrative record that was before the Administrator at the time when she made her now-challenged decision regarding Stewart's application for retirement benefits.

III.

Stewart contends that he is eligible for benefits under the Plan because he was involuntarily terminated on October 1, 2009. He maintains that when evaluating the Administrator's decision to deny benefits to him, the Court should give significant weight to the inherent structural conflict of interest that exists in this case: namely, the Administrator is an employee of Visteon, which has a financial incentive to deny benefits to him because it funds and, at the same time, administers the Plan.

"Although courts recognize that the interests of the insurance company are generally in conflict with the interests of a claimant, existence of a conflict of interest

7

'shapes' the application of, but does not change, the arbitrary and capricious standard of review." *Lanier v. Metro. Life Ins. Co.*, 692 F. Supp. 2d 775, 786 (E.D. Mich. 2010) (internal citation omitted). In *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008), "the Court instructed lower courts to consider a structural conflict of interest, but counseled that the weight accorded to that factor should vary depending on the circumstances of the case." *Lanier*, 692 F. Supp. 2d at 787. "[T]he conflict of interest inherent in self-funded plans does not alter the standard of review, but 'should be taken into account as a factor in determining whether the . . . decision was arbitrary and capricious.'" *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998) (quoting *Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689, 694 (6th Cir.1989)). In this case, the evidence indicates that a structural conflict of interest exists, resulting from Visteon's dual role as funder and administrator of the Plan. However, the Court is unaware of any persuasive evidence which suggests that this conflict impacted the Administrator's decision to deny benefits to Stewart..[3]

A careful review of the evidence in this case indicates that both parties have agreed on the following facts: (1) Stewart's job was never eliminated; (2) work existed for him to perform at the Milan plant; and (3) notwithstanding the availability of work, Stewart

---

[3]Stewart alleges that Dorothy Stephenson played conflicting roles in this case, inasmuch as she allegedly decided to terminate him from the payroll system as of October 1, 2009 and then later made the decision to deny him benefits as a result of this termination. In support of this position, Stewart proffered an email message from an employee with the last name of Stephenson who expressed her desire to remove Stewart from the Company payroll. However, the Defendants have asserted that the author of this email was Marie Stephenson -   unrelated to Dorothy Stephenson. Def. Reply 4 (ECF No. 16).

wanted to retire on October 1, 2009. The primary point of contention is whether Stewart voluntarily retired on October 1, 2009 or whether he delayed his date of retirement until November 1, 2009, rendering his termination on October 1 involuntary. Stewart contends that he initially requested a date of October 1, but upon learning that his benefits would not begin until November 1, switched his retirement to the latter date. The Defendants contend that Stewart submitted to voluntarily retire on October 1, 2009.

After reviewing the Administrator's decision to deny Stewart benefits under the Plan, the Court cannot say that it was arbitrary and capricious. During her investigation, the Administrator consulted with the benefits personnel who spoke with Stewart when he requested his retirement date. They confirmed that he requested a retirement date of October 1, 2009, at which time he was informed that if he retired on October 1, he would not begin receiving retirement benefits until November 1. According to the Administrator, this gap explains why the benefits documents contain a date of November 1, 2009 when Stewart's date of retirement was October 1, 2009. She also provided rational explanations for the fact that Stewart's group insurance and COBRA documents did not indicate that he voluntarily retired. As the Administrator has provided a rational explanation for her decision, the Court must affirm the decision.

Stewart next contends that Visteon is estopped from denying him benefits because his manager, Robert Hall, promised that he would receive them when he retired. According to the Defendants, this claim should be rejected because Stewart did not properly plead estoppel in his complaint. Stewart disagrees, maintaining that all of the underlying facts have been set forth in the complaint even if he did not expressly label his claim as estoppel. Regardless of whether the claim was properly pled, the Court must deny Stewart's claim of promissory estoppel because the

9

language of the Plan clearly and unambiguously requires an involuntary termination as a prerequisite for eligibility.

In order to establish a claim of estoppel in the ERISA context, Stewart must establish the following five elements:

> (1)[T]here must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003). A party may not, however, seek to estop a provision of an ERISA plan that is unambiguous. *Id.*

In this case, Visteon may not be estopped from enforcing the requirement of involuntary termination because, in the opinion of the Court, Section 3.01 of the Plan unambiguously states that an employee must be involuntarily terminated in order to qualify for the Plan. The text of the section states the following: "An Employee will be eligible for Severance Benefits described in Section 4.01 if the Employee's employment with a Participating Employer is involuntarily terminated by the Participating Employer . . . ." *See* Def. Mot. Summ. J., Ex. B, at 9. Nevertheless, Stewart submits that an ambiguity is created by Section 4.06, which states the following:

> Notwithstanding anything in the Plan to the contrary, but subject to
> any applicable order of the Bankruptcy Court, the Plan
> Administrator, in its sole and absolute discretion, may authorize

> the payment of additional or different benefits to an Employee, or
> the payment of benefits on different terms and conditions, if the
> Plan Administrator determines that such additional or different
> benefits or different terms and conditions are desirable under the
> circumstances surrounding the Employee's termination of
> employment.

*Id.* at 13. According to Stewart, this provision permits the Plan administrator to determine "different terms and conditions" for eligibility, thus granting her discretion to award benefits under the plan to certain individuals who voluntarily retire. This argument is unavailing. The language of Section 4.06 does not reference eligibility or the Administrator's exercise of discretion when making the initial determination of eligibility. Section 4.06 limits the discretion of the administrator to "the payment of additional or different benefits" or "the payment of benefits on different terms and conditions" than those otherwise detailed throughout Section Four. The fact that the Administrator is granted discretion to decide the amount, type, and manner in which Plan benefits will be paid to eligible employees does not create ambiguity as to the initial requirement for employee eligibility to participate in the Plan in the first instance. As the Plan unambiguously requires involuntary termination as a prerequisite for qualification, Stewart's estoppel claim must fail. *See Marks*, 342 F.3d at 456.

Finally, Stewart contends that, pursuant to Section 4.06 of the Plan, this case should be remanded to the Administrator for a further review of the medical conditions that forced his retirement. As described above, however, the language of Section 4.06 does not authorize the Administrator to grant eligibility to an employee who voluntarily retires. Stewart's request for

11

remand is denied.

IV.

For the reasons that have been set forth above, the Court grants the Defendants'
motion for summary judgment   (ECF No. 11) and denies the Plaintiff's motion for
summary judgment (ECF No. 12).


IT IS SO ORDERED.

Date: March 7, 2013                                     s/Julian Abele Cook, Jr.
                                                        JULIAN ABELE COOK, JR.
                                                        U.S. District Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF
System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March
7, 2013.

                                                        s/ Kay Doaks
                                                        Case Manager